Darson H. PERSYN, et al.,
Plaintiffs–Appellants,

v.

UNITED STATES of America, et al.,
Defendants–Appellees.

J.L. GUERRA and Herminia G. Guerra,
Plaintiffs–Appellants,

v.

UNITED STATES of America, et al.,
Defendants–Appellees.

No. 90–5611.

United States Court of Appeals,
Fifth Circuit.

July 5, 1991.

Craig L. Austin, San Antonio, Tex., for plaintiffs-appellants.

Paula Dlugosz, Judith A. Yacono, Asst. City Attys., San Antonio, Tex., for City of San Antonio.

Catherine M. Flanagan, Robert L. Klarquist, Dorothy R. Burakreis, Dept. of Justice, Land & Nat. Resources Div., Washington, D.C., for U.S.

Before CLARK, Chief Judge, JERRE S. WILLIAMS, and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Landowners in the vicinity of Kelly Air Force Base in San Antonio, Texas, claim that the Air Force effectuated a taking of their property under the Fifth Amendment by generating noise and conducting hazardous activities on the base. The landowners name the City of San Antonio ("City") as an additional defendant, alleging that the City acted under the authority of the United States when it passed ordinances greatly restricting the use of their property and diminishing its market value.

The district court transferred the cause of action against the United States to the United States Claims Court, finding that the Tucker Act, 28 U.S.C. §§ 1346 and 1491, vested exclusive jurisdiction in that court since the landowners' claims exceeded $10,000. The court then dismissed with prejudice the action against the City under Fed.R.Civ.P. 12(b)(6). The landowners appeal both the transfer of the action and the dismissal of the claims against the City. We find that we have no jurisdiction to review the transfer of the cause of action against the United States to the Claims Court. We also find the appeal of the dismissal of the claims against the City premature. Such an appeal must await the decision of whether the claims against the United States must be remanded to the district court.

*Facts*

In 1984, the Air Force initiated operations of both its C–5 and C–5A transport aircraft out of Kelly Air Force Base in San Antonio, Texas. In 1986, the Air Force also began B–1 bomber flights from the base. Noise generated from the base increased with the addition of the transport aircraft and bomber operations. The landowners assert that the increased decibel levels and risks associated with the additional overflights diminished the value of property located near the base.

For safety purposes, San Antonio requires clear zones 3000 feet in length and width at the ends of military airport runways located within its jurisdiction. In 1986, the Air Force requested the establishment of two military supplementary overlay zoning districts around Kelly Air Force Base as an additional safety precaution. The City passed Ordinance 62739–A creating these special districts extending beyond the existing 3000 feet clear zones. Zone 1 extended 5000 feet beyond the clear zone and Zone 2 extended 7000 feet beyond Zone 1. San Antonio, Tex., Code, § 35–222 (April 17, 1986). The ordinance imposed restrictions on the use of all land located within the overlay districts.[1] Two addition-

---

1. The prohibited uses of the land within the overlay zones are:

   1. Residential uses, except as provided for in Exceptions for Residential Uses.
   2. Transient lodging, hotels, and motels.
   3. Hospitals, sanitariums, and nursing homes.
   4. Public and private schools, including day care centers, professional, trade, and technical schools.
   5. Churches and cultural facilities.
   6. Auditoriums, except as a proper accessory to a permitted use.
   7. Correction, detention, and penal institutions.
   8. Flea markets.
   9. Amusement and recreational uses over 5000 square feet in size, except for golf courses, riding stables, and horse training facilities.
   10. Restaurants, eating and/or drinking establishments, clubs and lodges.

al ordinances passed during the next year, 64225 and 64961, refined and amended the use restrictions. The ordinances and their ultimate effect on property values near the base are the basis for a portion of the landowners' claims of a taking of their property.

Appellant Darson H. Persyn and the owners of 34 other tracts of land located adjacent to or near the base filed suit against the United States and the City of San Antonio on July 15, 1988. The landowners sought $16,754,352.50 in damages, attorney's fees, and costs for the alleged reduction of the value of their property caused by the overflights and the restrictive ordinances. Appellants J.L. and Herminia Guerra filed an identical suit seeking $2,215,000 in damages on December 6, 1989. The district court consolidated these two cases. The transfer of the claim against the Air Force and the dismissal of the claim against San Antonio followed. Appellants ask us to reverse both rulings, and to remand the case for trial in the district court.

## I. Notice of Appeal

■ We have an independent duty to determine our jurisdiction over any case presented to us for decision. *Morales v. Pan American Life Ins. Co.*, 914 F.2d 83, 85 (5th Cir.1990). To vest jurisdiction in this Court, a party must comply with Fed. R.App.P. 3(a) by filing a timely notice of appeal. Rule 3(c) provides that a notice of appeal "shall specify the party or parties taking the appeal." Under Fed.R.App.P. 4(a)(1) appellants filed their Notice of Appeal ("Notice") on July 12, 1990, within the 60–day time limit for appeals in which the United States is party. The Notice lists J.L. Guerra, Herminia Guerra, and Darson Persyn individually as the parties appealing to this court. It refers to the remaining landowners as "Et Al." We must determine whether we have jurisdiction over an appeal by all of the original plaintiffs or whether our jurisdiction is limited to the parties specifically named in the Notice.

■ The Supreme Court in *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 318, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988) held that the use of "et al." will not suffice to perfect an appeal for unnamed appellants. Under *Torres*, we lack appellate jurisdiction over parties other than those properly identified in the notice of appeal. *Samaad v. City of Dallas*, 922 F.2d 216, 219 (5th Cir.1991).

■ We have recognized an exception to this strict rule. A party may satisfy Rule 3(c) by filing some other paper identifying all of the appellants within the period allowed for appeals under Rule 4(a). *Brotherhood of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry. Co.*, 894 F.2d 1463, 1465 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990). In this case no such additional filing by any party was made. The district court clerk, however, listed all of the original plaintiffs in the docketing statement recognizing receipt of the landowners' notice of appeal. The landowners argue that this docketing statement cures the defect in their Notice under the *Brotherhood of Ry. Carmen* exception. We disagree.

The landowners refer us to the Tenth Circuit's decision in *Hubbert v. City of Moore, Okl.*, 923 F.2d 769, 772 (10th Cir. 1991). In *Hubbert*, a notice of appeal failed to indicate which parties were appealing the lower court's decision. A docketing statement filed with the notice of appeal, however, listed the specific parties taking the appeal. The Tenth Circuit held that the filing of the docketing statement cured the defect in the notice of appeal.

Although *Hubbert* superficially supports the landowners' argument, the facts of the two cases are distinguishable. The parties themselves in *Hubbert* filed the docketing statement listing the intended appellants. Here, the landowners did not file the docketing statement or any other document list-

---

11. Billboards.
12. Shopping centers/malls in Zone 1 and Shopping centers/malls in excess of 250,-000 square feet in Zone 2.

San Antonio, Tex., Code § 35–224.

ing additional parties claimed to be appealing. The clerk of the district court produced the docketing statement and transmitted it to us as a routine matter with the notice of appeal. Our opinion in *Brotherhood of Ry. Carmen* specifically requires a *party* to *file* some other document naming the parties appealing a decision to take advantage of the exception to Rule 3(c). The landowners have not satisfied that requirement. The fortuitous decision of the district court clerk to include all of the original plaintiffs in the docketing statement does not release the landowners from the requirements of Rule 3(c). We must conclude that only Darson H. Persyn, J.L. Guerra, and Herminia G. Guerra are involved in the asserted appeal to this Court.

## II. Claims Against the United States

The landowners seek in excess of $18 million in damages under the Fifth Amendment for the alleged taking of their property by military overflights and by the passage of the restrictive ordinances. The United States has waived sovereign immunity for civil actions founded upon the Constitution or an Act of Congress in the Tucker Act, 28 U.S.C. §§ 1346 and 1491. Both the district court and the Claims Court have jurisdiction to entertain these suits. The jurisdiction of the district court is limited, however, to claims not exceeding $10,000. 28 U.S.C. § 1346(a)(2).[2] Congress has vested exclusive jurisdiction over claims in excess of $10,000 in the Claims Court. 28 U.S.C. § 1491(a)(1).[3]

Since the landowners' claims exceeded $10,000, the district court held that the Claims Court was the only forum for the action. The district court transferred the complaint to the Claims Court under 28

**2.** 28 U.S.C. § 1346 states in pertinent part:
(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:
....
(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress....

**3.** 28 U.S.C. § 1491 states:
(a)(1) The United States Claims Court shall have jurisdiction to render judgment upon

U.S.C. § 1631.[4] The landowners assert that this transfer was improper because other provisions in the Tucker Act deprived the Court of Claims of jurisdiction. We do not consider those claims because we must first decide whether we have jurisdiction to review the district court's transfer order.

The landowners premise jurisdiction for appeal to this Court on 28 U.S.C. § 1291. Section 1291 only authorizes appeals from final decisions of the district court. A transfer order is an interlocutory order, and generally is not appealable. Section 1292(b) permits us to review some interlocutory orders, but only if the district court certifies the question. The landowners made no application for certification in this case, and there is no certification.

Although we have no authority to review this transfer under § 1291 or § 1292, we must consider whether to exercise jurisdiction under the collateral order doctrine. *Cohen v. Beneficial Indust. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949); *see also Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 11–12, 103 S.Ct. 927, 934–35, 74 L.Ed.2d 765 (1983). In *Cohen*, the Supreme Court held that direct appeal of an interlocutory order is appropriate if it (1) will determine conclusively the disputed question, (2) will resolve an important issue completely separate from the merits of the action, and (3) would be effectively unreviewable on appeal from a final judgment. We have more explicitly stated the requirements that an order must meet to be reviewable under the collateral order doctrine in *Acosta v. Tenneco Oil Co.*, 913 F.2d 205, 207 (5th Cir.1990):

> any claim against the United States founded upon either the Constitution, or any Act of Congress ... in cases not sounding in tort.

**4.** 28 U.S.C. § 1631 provides:
Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed....

The collateral order doctrine has four requirements: (1) the order must finally dispose of a matter so that the district court's decision may not be characterizable as tentative, informal or incomplete; (2) the question presented must be serious and unsettled; (3) the order must be separable from, and collateral to, rights asserted in the principal suit; and (4) there should generally be a risk of important and probably irreparable loss if an immediate appeal is not heard.

Whether the collateral order doctrine authorizes us to review a district court's order transferring an action to the Claims Court is a question of first impression in this Court. Other circuits addressing this specific issue differ.

The Tenth and Eleventh Circuits have held that the collateral order doctrine does not authorize review of these transfer orders. *Alimenta (USA) v. Lyng,* 872 F.2d 382, 384–85 (11th Cir.1989); *Jesko v. United States,* 713 F.2d 565, 567 (10th Cir.1983); *see also Raines v. Block,* 798 F.2d 377, 379 (10th Cir.1986). Both Circuits relied on the fact that the Claims Court would consider the jurisdictional issue and either dismiss the action for lack of jurisdiction or find jurisdiction and dispose of the case on the merits. Either disposition of the case would be a final decision subject to review by the United States Court of Appeals for the Federal Circuit. 28 U.S.C. § 1295(a)(3). Since the original transfer order of the district court would be reviewed by the Claims Court and could be reviewed by the Federal Circuit, the Tenth and Eleventh Circuits found that the transfer orders failed the "effectively unreviewable" requirement of *Cohen.*

One other Circuit has reached a contrary result. In *Gower v. Lehman,* 799 F.2d 925, 927 (4th Cir.1986), the Fourth Circuit relied on the collateral order doctrine to review a district court's order transferring an action to the Claims Court. The court held that the "district court's determination that it lacks jurisdiction cannot be effectively reviewed on appeal to the Federal Circuit from a final judgment of the Claims Court." The opinion offers no explanation for this conclusion.

Also, the D.C. Circuit in *Goble v. Marsh,* 684 F.2d 12, 14–15 (D.C.Cir.1982) allowed interlocutory review of a transfer order, but that case is distinguishable. The dispute in *Goble* was whether the appellant had successfully waived any claims exceeding $10,000 so as to allow the district court to retain jurisdiction. Even if the amount in controversy would not exceed $10,000, the Claims Court had jurisdiction over the action. Thus, effective review of the district court's decision to transfer the case could not occur because if there was error in transferring the case it would be deemed harmless. The unique facts of *Goble* present a clear case for application of the collateral order doctrine. We do not have the same compelling facts before us.

We hold in agreement with the Tenth and Eleventh Circuits that the district court's order transferring the action to the Claims Court is not effectively unreviewable and does not, therefore, fall into that narrow class of interlocutory orders immediately reviewable under the collateral order doctrine. We can see no obstacle whatsoever to a review in the Federal Circuit of the jurisdictional decision of the Court of Claims since the landowners assert that the Court of Claims has no jurisdiction. Thus, this is not a concurrent jurisdiction case like *Goble.* Since the district court's transfer order is not a final judgment, we must dismiss the landowners' appeal as to the claims against the United States for lack of appellate jurisdiction.[5]

---

**5.** We note that the jurisdictional problem presented here has been resolved for future cases by the addition of 28 U.S.C. § 1292(d)(4)(A). That section authorizes direct appeal to the Federal Circuit of orders transferring cases to the Claims Court. The statute applies only to cases commenced on or after November 19, 1988.

The original *Persyn* complaint was filed on July 15, 1988, prior to the effective date of the new section. The *Guerra* complaint was filed on December 6, 1989, after the effective date of the amended statute. The Claims Court will need to consider whether § 1292(d)(4)(A) permits direct appeal of the Guerra's claims to the Federal Circuit.

### III. Claims Against the City of San Antonio

The landowners assert that the City acted under the authority and for the sole benefit of the United States when it passed a series of ordinances restricting the use of property near Kelly Air Force Base. Passage of these ordinances allegedly subjected the City to joint liability with the United States for compensation to the landowners for the claimed taking of their property. The district court granted the City's Fed.R. Civ.P. 12(b)(6) motion, finding that the landowners failed to state a claim against the City for a constitutional taking. The landowners ask us to review that dismissal.

The landowners alleged in their complaint that the United States and the City were jointly liable for a taking resulting from the passage of the restrictive ordinances. The landowners claimed, in effect, that the City acted as an agent of the United States when it passed the ordinances. The landowners rely heavily on this alleged agency to argue that transfer of the claims against the United States to the Claims Court was improper. Specifically, the landowners complain that there is no forum to adjudicate their joint taking claim against the United States and the City. The landowners conclude that either 28 U.S.C. § 1500 or the Tucker Act is unconstitutional because they are prevented from bringing their joint taking action either in the Court of Claims or the district court.

■ The Claims Court only has jurisdiction over claims against the United States, 28 U.S.C. § 1491(a)(1), so it cannot hear the claims against the City. In addition, 28 U.S.C. § 1500 prevents the Claims Court from exercising jurisdiction over claims against the United States when a plaintiff has the same claim pending in another court against the United States or a party acting under the authority of the United States. The landowners read § 1500 to prevent the Claims Court from exercising jurisdiction since the landowners had claims pending in the district court against the City for acting under the authority of the United States. Finally, the district court does not have jurisdiction over the

joint claim because the damages sought by the landowners exceed $10,000. 28 U.S.C. § 1346(a)(2).

The district court solved this unique jurisdictional dilemma by dismissing the action against the City, thereby removing the § 1491(a)(1) and § 1500 barriers to transfer of the claims against the United States to the Claims Court. We have already held that we have no jurisdiction to review the propriety of that transfer. We must now determine whether we have jurisdiction to review the court's dismissal of the claims against the City.

■ Dismissal with prejudice under Rule 12(b)(6) is a decision on the merits and is a final judgment for purposes of appeal under 28 U.S.C. § 1291. *See Mahone v. Addicks Utility Dist. of Harris Cty.*, 836 F.2d 921, 940 (5th Cir.1988). In a case involving multiple parties, however, an order adjudicating the rights and liabilities of fewer than all of the parties is generally not appealable as a final order. *Matter of Moody*, 825 F.2d 81, 85–86 (5th Cir.1987). The problem here is that the Claims Court or the Federal Circuit might remand the landowners' claims against the United States to the district court. That contingency prevents the district court's judgment from being an appealable final order under § 1291.

The dismissal is also not appealable under the collateral order doctrine. Although the order finally disposes of the landowners' claims against the City, the issue involved is not separate from the claims against the United States. *See Cohen,* 337 U.S. at 545–47, 69 S.Ct. at 1225–26; *Acosta,* 913 F.2d at 207–08. We also cannot conclude that the dismissal will be effectively unreviewable absent immediate appeal. If the Claims Court resolves the landowners' claims against the United States, the landowners can then appeal the dismissal to this Court as a final order.

We hold that at this time we have no jurisdiction to review the district court's dismissal of the claims against the City. Until the claims against the United States are decided by the Claims Court or remand-

ed to the district court, the landowners cannot appeal the dismissal to this Court.

## Conclusion

We do not have appellate jurisdiction to review the district court's order transferring the landowners' claims against the United States to the Claims Court. The appeal of the court's order dismissing the claims against the City of San Antonio is premature. The appeal from the latter order must await the decision of the Court of Claims involving the asserted right to a remand to the district court of the claim against the United States. Accordingly, we dismiss the landowners' appeal of the two orders of the district court.

APPEAL DISMISSED.